16129

KAHN v. KAHN
(49 S. E. (2d) 570)

*Messrs. A. W. Holman, and Wise, Whaley & McCutchen,* of Columbia, for Appellant,

*Messrs. C. T. Graydon and John Grimball,* of Columbia, for Respondent,

September 23, 1948.

FISHBURNE, Justice.

This case presents an important question under the Full Faith and Credit Clause of the United States Constitution. Art. IV, Sec. 1. It is whether a Florida decree awarding an absolute divorce in a fully litigated proceeding may be subjected to collateral attack in the courts of this State on the ground that the respondent was not domiciled in Florida at the time the decree was granted. There are also certain subsidiary questions presented, but a determination of the issue stated will be determinative of the case.

The appellant, Bessie Kahn, and the respondent, M. B. Kahn, were married in Ohio in 1922, and lived there together for several years. At the time of their marriage, the respondent and the appellant each had two young children by former marriages. As the result of their marriage, they had one child, who is now of age. During the real estate boom in Florida, they moved to that State, where respondent became actively engaged in the business of a building contractor. After spending several years in Florida, respondent and his family moved to Columbia, South Carolina, where he continued in the real estate and construction business. Following a long period of marital discord, respondent left his wife in 1942 and lived separate and apart from her in the city of Columbia.

Shortly after their separation respondent went to Reno, Nevada, for the purpose of obtaining a divorce. Appellant

arrived upon the scene, and due to objections raised by her he abandoned his objective at that time and returned to Columbia, but they continued to live separate and apart. On April 3, 1944, a property settlement was entered into between appellant and respondent, under the terms of which he paid to her the sum of Fifteen Thousand Dollars, and in addition certain hospital, doctor's, and nurse's bills incurred by appellant. Respondent agreed in this property settlement to pay to plaintiff $350.00 per month as alimony so long as she should remain unmarried; and in the event of her remarriage, the sum of One Hundred and Seventy-Five Dollars per month during the remainder of her natural life. These monthly payments were made regularly on the first day of each month.

On August 4, 1944, respondent, M. B. Kahn, filed a bill of complaint for divorce in the circuit court of the Second Judicial Circuit of the State of Florida. The complaint alleged extreme cruelty as grounds for divorce, and also alleged that the respondent, M. B. Kahn, was a *bona fide* resident of the State of Florida. Section 65.02 of Florida Statutes Annotated provides: "In order to obtain a divorce the complainant must have resided ninety days in the State of Florida before the filing of the bill of complaint." Appellant does not contend that the requirements of "domicile" as defined by the Florida cases are other than those generally applied or differ from the tests employed by the South Carolina courts. *Fowler v. Fowler,* 156 Fla. 316, 22 So. (2d) 817; *Evans v. Evans,* 141 Fla. 860, 194 So. 215.

In this divorce proceeding, appellant retained Florida counsel, who entered a general appearance, and on September 4, 1944, filed an answer denying the allegations of respondent's complaint, including the allegation as to respondent's Florida residence, and demanding strict proof thereof.

In his bill of complaint, respondent alleged that he was a citizen and resident of the county of Leon, in the state of Florida, and had been a resident of the state of Florida for

more than ninety days next preceding the filing of the bill of complaint. Appellant in her answer, as stated, denied the allegations of cruelty and of residence, and on the same day, September 4, 1944, filed a cross bill signed and sworn to by her, in which she sought separate maintenance, alimony *pendente lite,* solicitor's fees, and suit money. In this cross complaint she alleged that she was "submitting herself to the jurisdiction of this court, and now desires to file in said court a cross bill for separate maintenance." On October 11, 1944, an amended bill of complaint was filed by the respondent in the divorce proceeding, and on October 18, 1944, appellant filed an answer to respondent's amended complaint. All of the pleadings were verified.

On the 29th day of January, 1945, hearings were commenced before a Special Master in the divorce proceedings, and continued through the first day of February, 1945. Throughout the entire proceedings, and at all of the hearings, the appellant was present and was represented by counsel, and contested the case. Respondent introduced evidence to substantiate the allegations of his complaint, based upon cruelty, and to establish his Florida residence. Counsel for appellant, Bessie Kahn, had full opportunity to cross examine respondent and his witnesses, and to introduce evidence in rebuttal.

The Special Master, after taking the testimony of the witnesses produced by the parties, filed his Report and Recommendations on March 12, 1945. He found and reported, among other things, that the Florida Court had jurisdiction of the parties and of the subject matter of the divorce suit; and further that the proof in respect to respondent's residence in the State of Florida was *bona fide* and sufficient. The Special Master made further recommendations and findings to which we shall presently advert.

In her cross bill in the divorce proceeding, appellant alleged that the property settlement entered into in Columbia

between her and respondent had been obtained by fraud and coercion, and she demanded an additional sum of One Thousand Dollars per month alimony. Upon completion of the testimony and hearings in Florida, it was stipulated and agreed by counsel for appellant and respondent that further testimony would be taken in Columbia, South Carolina, on February 9, 1945, before a Notary Public to be agreed upon. The testimony at this hearing in Columbia was offered for the purpose of ascertaining the financial ability of the respondent to pay an increased monthly alimony to appellant.

The testimony was taken on February 9, 1945, and on that day a stipulated property settlement was signed by respondent and appellant. This settlement provided for the payment by respondent to appellant of an additional sum of $2,000.00 in cash, and the payment of $1,000.00 to appellant's attorney in the Florida divorce proceeding; the payment of all costs in the case, including the sum of $500.00 as the fee of the Special Master, together with the continued monthly payment of $350.00 alimony as provided in the original property settlement of April 4, 1944. It was agreed between respondent and appellant, "that this is a final irrevocable agreement between the parties," upon confirmation by the circuit court of Leon County, Florida.

In his Report, the Special Master recommended that a divorce a *vinculo* be granted respondent against appellant; that the stipulated property settlement of February 9, 1945, be confirmed, and that the property settlement dated April 3, 1944, as to the payment of the sum of $350.00 per month alimony to the appellant for so long as she remains unmarried, and the sum of $175.00 per month in the event of her remarriage, be ratified and confirmed.

The circuit court of the Second Judicial Circuit of the State of Florida, on March 12, 1945, entered a final decree of divorce after specifically finding "that it has jurisdiction of the subject matter and the parties to this cause." The

court proceeded to accept and confirm the Recommendations of the Special Master, and reserved jurisdiction of the parties and of the cause, "subject only to the provisions of Section 65.15 Florida Statutes Annotated, insofar as the same may in the future be applicable because of any material change in the circumstances of the parties."

The appellant failed to challenge the decree by appeal to the Florida Supreme Court. Thereafter, at some time not appearing in the record, respondent returned to Columbia, where he now resides, and remarried. Appellant has not remarried, and continues to make her home in Columbia. In accordance with the decree of the Florida Court of date March 12, 1945, respondent paid to appellant the sum of $2,000.00, paid her attorney's fees, the Master's fee, and the costs of the court, and has since that date continued to pay her the sum of $350.00 monthly.

More than two years later, on July 15, 1947, appellant instituted the present action against respondent in the circuit court of Richland County. In this action she asks the court to declare the Florida divorce decree invalid for lack of jurisdiction, to set aside the property settlement of April 3, 1944, because of fraud and coercion, to grant her a divorce a *mensa et thoro* based on respondent's desertion, and for $1,000.00 monthly as alimony, in addition to temporary alimony, and for attorney's fees. The respondent filed a demurrer to the complaint, which raised the issue now before us that the Florida decree is not subject to collateral attack.

When this cause was heard before the circuit court of Richland County, that court had before it not only the complaint and the demurrer, but also, by agreement of counsel for respondent and appellant, the record of the divorce proceeding in the circuit court for the Second Judicial Circuit of Florida; and it was agreed that the court should have this record before it for consideration in reaching a decision in

the present case. When counsel for appellant entered into the aforesaid agreement it was in effect equivalent to amending appellant's complaint by incorporating therein the Florida divorce proceeding. Otherwise, the demurrer could not reach it. And the record in this divorce proceeding has been included in the transcript of record now before us on this appeal.

The demurrer was sustained by the circuit court on the ground that the divorce proceeding in Florida was valid, and was not the subject of collateral attack because the divorce decree was rendered in a case in which appellant appeared in person and by counsel, and not only contested the case but demanded and received in that Court affirmative relief. Under such circumstances, the Florida Court's jurisdiction was held to be unassailable.

The issue presented here is governed by the Full Faith and Credit Clause of the United States Constitution, Art. IV, Sec. 1, and has been determined adversely to the contention of appellant in the very recent case of *Sherrer v. Sherrer*, 334 U. S. 343, 68 S. Ct. 1087, 92 L. Ed.—(No. 36, decided June 7, 1948). In the *Sherrer case* the facts are practically identical with the facts in the case at bar with reference to jurisdiction. The husband and wife were married in 1930, and lived together in Massachusetts from 1932 to 1944. The wife went to Florida on April 3, 1944, and after the lapse of ninety days, as in this case, filed suit for divorce. The husband was served by mail. He retained Florida counsel, a general appearance was entered. He filed pleadings denying petitioner's Florida residence, and later he personally appeared and testified in the suit. The wife was granted a divorce on November 29, 1944, and shortly thereafter she remarried. No appeal was taken to the Florida Supreme Court. In 1945 the husband instituted an action in a Massachusetts Probate Court seeking to have the divorce declared invalid, praying that he might be permitted to con-

vey his real estate as if he were sole, and asking that the court declare that he was living apart from his wife for justifiable cause. The Probate Court heard evidence and made a finding that the wife was never domiciled in Florida, and granted the relief prayed for by the husband. The Supreme Judicial Court of Massachusetts affirmed on the ground that the Full Faith and Credit Clause of the Constitution did not preclude a re-examination of the finding of domicile made by the Florida Court. The Supreme Court, speaking through Chief Justice Vinson, held:

"* * * The requirements of full faith and credit bar a defendant from collaterally attacking a divorce decree on jurisdictional grounds in the courts of a sister State where there has been participation by the defendant in the divorce proceedings, where the defendant has been accorded full opportunity to contest the jurisdictional issues, and where the decree is not susceptible to such collateral attack in the courts of the State which rendered the decree."

The Court went on to state:

"* * * the recognition of the importance of a State's power to determine the incidents of basic social relationships into which its domiciliaries enter does not resolve the issues of this case. This is not a situation in which a State (Mass.) has merely sought to exert such power over a domiciliary. This is, rather, a case involving inconsistent assertions of power by courts of two States of the Federal Union and thus presents considerations which go beyond the interests of local policy, however vital. * * *

"It is one thing to recognize as permissible the judicial re-examination of findings of jurisdictional fact where such findings have been made by a court of a sister State which has entered a divorce decree in *ex parte* proceedings. *Williams v. North Carolina*, 1945, 325 U. S. 226, 65 S. Ct. 1092 (89 L. Ed. 1577, 157 A. L. R. 1366). It is quite another thing to hold that the vital rights and interests in-

volved in divorce litigation may be held in suspense pending the scrutiny by courts of sister States of findings of jurisdictional fact made by a competent court in proceedings conducted in a manner consistent with the highest requirements of due process and in which the defendant has participated. We do not conceive it to be in accord with the purposes of the full faith and credit requirement to hold that a judgment rendered under the circumstances of this case may be required to run the gauntlet of such collateral attack in the courts of sister States before its validity outside of the State which rendered it is established or rejected. That vital interests are involved in divorce litigation indicates to us that it is a matter of greater rather than lesser importance that there should be a place to end such litigation."

To the same effect, see the companion case of *Coe v. Coe,* 334 U. S. 378, 68 S. Ct. 1094, 92 L. Ed. — (No. 37, decided June 7, 1948).

The case of *Sherrer v. Sherrer, supra,* is distinguished from the well known case of *Williams v. North Carolina,* 325 U. S. 226, 65 S. Ct. 1092, 89 L. Ed. 1577, 157 A. L. R. 1366. The court pointed out that in *Sherrer v. Sherrer, supra,* unlike the situation in *Williams v. North Carolina, supra,* the finding of the requisite jurisdictional facts was made in proceedings in which the defendant appeared and participated. In the *Sherrer case,* the court cites as direct and supporting authority the case of *Davis v. Davis,* 305 U. S. 32, 59 S. Ct. 3, 83 L. Ed. 26, 118 A. L. R. 1518.

Applying the principles announced in the *Sherrer* and *Davis cases,* cited above, we hold that the circuit court of Richland County committed no error in adjudging that the Florida divorce decree is not subject to collateral attack based on the ground that respondent was not domiciled in Florida. Appellant actively participated in the Florida proceedings by entering a general appearance, filing pleadings, and placing in issue the very matters she now seeks to con-

test in the circuit court of Richland County. She personally appeared before the Florida Court, attended all hearings, offered testimony, and retained Florida counsel to represent her throughout the entire case. The record of the Florida divorce proceeding clearly shows that appellant was given a full opportunity to contest the issue of respondent's domicile, and all other issues relative to the litigation. And it is quite evident that appellant was fully prepared to take advantage, and did take advantage of the opportunity afforded her to contest the divorce proceeding every step of the way.

It is clear that appellant has been given her day in court with respect to every issue she now seeks to raise, including the jurisdictional issue of respondent's Florida domicile. The record shows that the proceedings in the Florida Court prior to the entry of the decree of divorce were in every way consistent with the requirements of procedural due process. Nor does the appellant urge the contrary.

The appellant cites and relies upon *Andrews v. Andrews,* 188 U. S. 14, 23 S. Ct. 237, 47 L. Ed. 366. The *Andrews case* was likewise brought to the attention of the court in *Sherrer v. Sherrer, supra,* as militating against the result reached by the court. In disposing of the contention, the court said in *Sherrer v. Sherrer, supra*:

" * * *  on its facts, the *Andrews case* presents variations from the present situation. But insofar as the rule of that case may be said to be inconsistent with judgment herein announced, it must be regarded as having been superceded by subsequent decisions of this Court. The *Andrews case* was decided prior to the considerable modern development of the law with respect to finality of jurisdictional findings."

Appellant charges error to the circuit court of Richland County in holding that the separation and property agreement of April 3, 1944, was merged in the divorce decree of the Florida Court. By way of answer to the bill of complaint in the divorce proceeding in Florida,

appellant prayed that this property settlement be set aside, and charged that it had been obtained by fraud and coercion. At the hearings before the Special Master in that proceeding, this matter was fully gone into and appellant availed herself of the opportunity to attack the validity of the property settlement. The Florida Court by its final decree ratified and confirmed not only this settlement, but the later stipulated settlement signed by her in Columbia on February 9, 1945. As heretofore stated, appellant did not appeal from the judgment of the Florida Court, and any question now affecting the validity of the settlements referred to must be regarded as settled and ended. Since the date of the filing of the Florida decree, on March 12, 1945, appellant has enjoyed all the benefits derived from that proceeding. She was given an additional property settlement of $2,000.00; and respondent, in accordance with the provisions of the Florida judgment, has never ceased to pay her the monthly alimony of $350.00 per month. We hold that she has had her day in court.

Judgment affirmed.

BAKER, C.J., and STUKES, TAYLOR, and OXNER, JJ., concur.