KANNER, Chief Judge.
Appellant petitioned the chancellor to declare appellee’s creation of Suncoast Medical Clinic, Inc., hereinafter referred to as the clinic, and the contracts entered into by appellee with the clinic to be fraudulent insofar as she was concerned, or if not fraudulent to be in violation of her alimony rights under the contract theretofore entered into between the appellant and appellee, in consequence of which he should pay her alimony as though the clinic had never existed. In the alternative, if the contracts were found to be valid, then because of the changed circumstances in the method in which appellee conducts his business, it was prayed that the court find that the money received as alimony under the formula in their agreement is insufficient for the appellant and for the support and education of the three children of the parties and that the court consequently increase the amount of alimony for appellant and, in addition, set a reasonable sum for the care and education of the children. The chancellor ruled that the creation of the clinic and appellee’s contracts with it were not in violation of appellant’s alimony rights, but ordered that appellee pay an additional $100 per month to appellant for each child for their support and maintenance and made certain other findings and allowances. It is from this decree that this appeal was taken. Appellee has filed a cross appeal in this connection but directs his attack upon the award for the children and certain of the findings.
The prelude to this appeal includes two previous actions. First, there was the divorce proceeding in 1953, after the couple had been married for ten years, the final decree to appellee embodying an agreement between the two whereby appellant received custody of the three children, the sum of $400 per month from the appellee for support and maintenance of the children and herself, and their home upon which appellee would continue to make mortgage payments until appellant remarried.
The first sequel to the divorce action came in 1955 when appellant filed a complaint in which she charged that appellee was guilty of fraud and deceit or overreaching in the divorce proceeding. She petitioned the court to set aside and annul provisions of the final decree except for the granting of the divorce to appellee. The result of this controversy was a settlement whereby an agreement was entered into between the parties on December 27, 1955, and approved by the court. The agreement incorporated the following formula and provisions :
“ * * * 3. Defendant agrees to pay to the Plaintiff, as alimony, sums of money to be computed as follows:
ifc ‡ sfc ^ % ‡
“b. Commencing in February, 1956, sums of money arrived at by computing Defendant’s individual adjusted gross income, as defined by the Internal Revenue Code of 1954, taking into consideration only his income and deductions derived solely from his medical practice and the real property described as
“North one-half (j/£) of Lot 3, Block 82, Revised Map of the City of St. Petersburg according to the map or plat thereof on file in the Public Records of Pinellas County, Florida,
multiply said individual adjusted gross income by .35 and subtract $2,600. In the event the real property above described is sold or otherwise liquidated, the investment and reinvestment of the proceeds of said sale or liquidation of *424 said property shall be substituted in the preceding- formula for the property itself. * * *
“6. The Plaintiff shall have the primary responsibility for the support and maintenance of the minor children of the parties. * * * ”
The second sequel to the divorce came subsequent to this agreement when, in 19S6, appellee created a corporation known as the Suncoast Medical Clinic, Inc., in which were issued one hundred shares of capital stock at five dollars a share for a total of $500, forty-nine shares of which appellee purchased and forty-nine shares of which his present wife purchased, with the bookkeeper of appellee purchasing the remaining two shares. The clinic became operative July' 1, 1956. In appellee’s contracts with the clinic, the following arrangements were included:
1. Appellee sold all of his office equipment, furniture, and fixtures to the clinic for $9,370.20.
2. Appellee sold to the clinic all of his accounts receivable and cash received at the time services were performed, owing from his own personal services as a physician, for 60% of the face value of the amount billed. Payment was to be made at the end of each month on the basis of the total amount billed for services rendered during the month. In consideration for its 40% discount on the accounts receivable and cash collected, the clinic assumed all risk of bad debts and guaranteed 60% to the defendant of the amounts billed; the clinic performed all administrative functions required by the defendant in his practice and in the collecting of accounts receivable; and the clinic provided office space and equipment necessary to conduct the practice of medicine.
3. Appellee sold to the clinic all of his accounts receivable in the total amount of $38,771.26 for services rendered prior to July 1, 1956. Pursuant to the 60% to 40% arrangement, he was to receive $23,262.72 or 60% of the total. Appellee further agreed that the clinic could pay the amount due for the purchase of said accounts at the rate of $500 monthly, the first payment to be made in January, 1957, and subsequent $500 payments monthly until the $23,-262.72 had been paid in full.
4.Appellee gave the clinic the right to render all services previously performed by his staff, including the administering of medication, laboratory work, physiotherapy, x-ray, and radiology. Appellee was employed as a director of the clinic at a monthly salary of $435 per month.
We are convinced that the able chancellor erred in holding that the contracts entered into by appellee with the clinic were not in violation of appellant’s alimony rights. Appellant having sought relief in the alternative in the event the court should find the contracts with the clinic not to have been in violation of her alimony rights, the other findings of the chancellor were principally under this alternative. Because of our conclusion that the chancellor erred in holding that the contracts were not in violation of appellant’s alimony rights, we are also of the view that certain of the further decretal provisions cannot stand, as hereinafter noted.
Appellant contends that the contracts with the clinic by the appellee were fraudulent insofar as she is concerned, or if not fraudulent that they violated substantially the alimony contract. She urges inadequacy of consideration in connection with the transaction with the clinic. Before these contracts were made with the clinic, it appears that the appellee’s gross income for professional services for 1953 was $57,-741.84 with an adjusted gross income of $26,153.84; for 1954 his gross income was $89,323.07 and adjusted gross income $50,-751.28; for 1955 his gross income was $102,169.05 and adjusted gross income $50,081.70; and for the six months’ period from January 1, 1956, through June 30, 1956, his adjusted gross income was $17,-624.10 with appellee’s contracts with the *425 clinic going into effect on July 1, 1956; that appellee’s adjusted gross income for 1956 was $27,368.63, making an adjusted gross income for the last six months of 1956 $9,-744.53 as compared to the $17,624.10 for the first six months; and that the clinic’s net income for the period July 1, 1956, through September 30, 1956, was $6,647.32.
The records show that the right to the clinic to administer and receive proceeds from certain specialized services to appel-lee’s patients, such as medication, laboratory, and x-ray, represented a source of income which had formerly yielded an estimated fifty-five per cent of appellee’s gross income, or approximately $55,000 annually.
Appellee’s position is that the altered method of transacting business through the clinic was not arrived at for any fraudulent reasons nor for any purpose of violating appellant’s alimony rights. Rather the contention is that the clinic was formed for the purpose, among other things, of relieving him of certain administrative duties in order that he might devote more time to his practice, and in order that the growth potential of the clinic (leading to its expansion with additional physicians, a broadened scope of activities, and the cutting of overhead costs) could, through sole proprietorship, provide security for himself and his family. In the event he became disabled or died, the clinic would continue to operate and provide a constant source of income for appellee and his family. There was testimony that the clinic’s mode of operation and appellee’s connection with it paralleled that of other medical clinics. He denies that there was inadequate consideration paid him in connection with any of his contracts with the clinic.
Appellee insists that the net sum of $6,-647.32 shown to have accrued to the clinic during the first three months of its operation came largely from accounts receivable prior to July 1, 1956, and that after paying current expenses, the clinic actually made little or no profit during those months. However, appellee’s own exhibit shows the $6,647.32 as net income and he does not attempt to say that some of it was not profit.
The clinic is owned and controlled by appellee and his present wife. Whatever profit that is derived under the arrangement vests in the clinic. As shown, within a period of three months a profit of over $6,000 was made taking the appellant’s view, and some profit was made taking the appel-lee’s view. Whatever profit accrues to the clinic, the appellee has a 49% interest and his present wife 49%, for which capital stock of the corporation they paid five dollars per share for a total of $245 each.
It is clear that the net result of appel-lee’s contract with the clinic shows a substantial reduction of the income of appel-lee and this is, in effect, supported by the finding of the chancellor.
Although the parties disagree as to the term “medical practice” as contained in the contract between the appellee and appellant, appellee had during the previous six months included proceeds from the specialized services in computing alimony payments; and, as has been pointed out, these specialized services yielded approximately fifty-five per cent of appellee’s income. Whether or not the term “medical practice” includes only income for services performed personally by appellee and not the services performed by members of his staff cannot be determined by this court under the present state of the .record. At this juncture we will deal with this question so that, if there is any further controversy about it, the parties and the chancellor may be guided accordingly.
Appellant had offered to prove the meaning the parties had placed on the term “income derived from medical practice” by the testimony of the attorney who represented appellee when the contract was drawn, and the appellee interposed objections. Appellant’s attorney also offered to testify; and, although appellee’s counsel consented to appellant’s counsel’s testifying notwithstanding that he was appellant’s at *426 torney iii the case, he did interpose objections similar to those that had been made against the testimony of the other attorney.
Below are listed the grounds of the objection together with this court’s comments following each ground:
1. That the contract spoke for itself and could not be varied by parol testimony. The testimony proposed was to explain a term of the contract and not to vary any term. It is true that parol testimony is not admissible to vary or change terms of a written instrument that are clear and unambiguous; however, if a term in' the instrument is not clear and unambiguous, parol testimony is admissible for the purpose, not of changing or varying the term but to explain or clarify it. Friedman v. Virginia Metal Products Corp., Fla.1952, 56 So.2d 515, 33 A.L.R.2d 956.
2. That there was no evidence that appellee’s attorney had special authority to make any agreement with appellant’s attorney. As indicated, appellant offered to show that the then attorney for appellee prepared the contract and that he and the attorney for appellant agreed as to the meaning of the term "medical practice” as applied to the contract. Under the evidence proposed it would appear that the testimony of the attorneys is independently relevant. This principle is stated in 31 C.J.S. Evidence § 348, p. 1121, where it is said:
"Statements of an agent may be competent because they are relevant facts which either alone or with other facts constitute the transaction itself, provided they were made within the scope of the agency, or were ratified by the principal. Thus where an agent makes representations, accepts, claims, disclaims, ratifies, .or waives something for his -principal, or acts as interpreter, or makes a contract, offer of settlement, or ouster for him, the agent’s ■.'statements may be the- facts which constitute the legal result.” (Emphasis supplied.)
Thus where an attorney’s statement embodies the operative facts of the transaction, it may be independently relevant and admissible; and even though an attorney’s admission is not made under circumstances making it evidence against his client, it may be admissible to show that the attorney knew the fact, admitted. See 31 C.J.S. Evidence § 361, p. 1136.
3. That the agreement was entered into in compromise and settlement of a suit which it did settle. The proposed testimony was not to show the details of an attempted compromise but rather to explain a provision of a consummated agreement. The agreement concerned was executed by the parties, approved by the court, and was recognized and complied with by the parties over a period of several months.
4. That any conversations between appellee’s attorney and appellant’s attorney would have been confidential communications. The purpose of the testimony proposed concerned, not confidential communications between attorney and client, but communications and agreements between the attorneys for the parties. In the case of Buckmaster v. Kelley, 1875, 15 Fla. 180, 193, where testimony of an attorney was given in evidence, the court said:
“There is no reason why any fact, material to the issue, may not be shown by either party by the testimony of an attorney on either side, provided the facts proposed to be proven were not obtained by him in the confidence of attorney and client.”
See also Parker v. Priestley, Fla.1949, 39 So.2d 210; and 58 Am.Jur., Witnesses, section 152, p. 110.
It is to be noted that, although the chancellor refused to permit the attorneys to testify, he did permit certain doctors to give testimony with reference to the meaning‘of- the term; -“medical practice”. The *427 contract is between a member of the medical profession and his former wife, a lay person, whose alimony rights it concerns. The appellant and appellee had applied the term, “medical practice”, from the time of the execution of the contract until the time of the creation of the clinic, over a period of several months, as being inclusive, not only of the income derived from appellee’s services but from those of members of his staff as well, and the appellee had computed his income and made alimony payments accordingly. Moreover, it was proposed to show what had been agreed upon as to the meaning of the term “medical practice” between the then attorney for appellee who prepared the contract and the attorney for the appellant. Under this particular set of circumstances the chancellor should have permitted the attorney representing the appellee in the preparation of the contract to testify within the rules stated, and also the attorney for appellant, subject first to his fulfilling the requirements of Rule B, section (I) 19 of the Code of Ethics. The objections above "recited should have been overruled.
Relief against fraudulent conveyance as discussed in 17 Am.Jur., section 785, pp. 806-808, under the subject of Divorce and Separation, sets forth:
“It is generally held that a wife, in respect of her right to maintenance or alimony, is within the protection of statutes or the rule avoiding conveyances or transfers in fraud of creditors or other persons to whom the maker is under legal liability. It seems that this is so irrespective of whether the conveyance or transfer was made before and in anticipation of a suit by the wife for divorce or for maintenance or alimony, pending the suit, after a 'decree had been made in the wife’s favor, or even before and in contemplation of marriage.”
Also see section 726.01, Florida Statutes, F.S.A., relating to fraudulent conveyances.
In the instant case we are not confronted with an arrearage of a specific sum of alimony sought to be enforced against property or assets transferred, not bona fide, into the hands of another, nor are we confronted with an anticipated specific sum of alimony to become due whereby an action might be brought to prevent or set aside a non-bona fide transfer of property or assets into the hands of another. Rather, the case here is based upon a specific formula with a more or less definitive anticipatory effect. Appellee assumed the prerogative of materially changing the effect of this formula and of altering the logically anticipated result by reason of which there "has 'been* a substantial curtailment of income.
It is to be noted that appellee is in the prime of life with years of professional growth and productivity ahead • of him. The agreement for alimony páym'ents takes .into account the advancing years of appel-lee, reflecting not only his ability to pay but changing economic demands wrought either by degree of success or altered and fluctuating economic standards, with a graduated scale of decreasing alimony sums up to the time appellee becomes 55 years of age, at which time the discretion of the court was to be sought.
The chancellor determined, in upholding the creation of the clinic and the contracts entered into with it, that there was no improper motive, but that the purpose was to rninimize taxes. But it must be recognized .that even if the acts of appellee were free from moral wrong and were of good intention, the object sought to be accomplished had the end result of impairing and diminishing valuable contractual rights of the appellant.
We conclude that such an arrangement cannot be used to impair the right of the appellant to her income as reasonably expected through the formula agreed upon and sanctioned by the court. Such a procedure, under the case here, could be contorted into a circumvention and if sane- *428 tioned by the court could be tantamount to an invitation to utilize such a procedure in this manner.
In this ruling- we are not holding that the Suncoast . Medical Clinic, Inc., is not a legally authorized corporation, nor are we holding that it cannot function for the purposes set forth for its creation and carry on its business and perform its services, but our holding is restricted only to the proposition that the contracts entered into with the clinic by appellee cannot be applied to or made operative against the alimony rights of appellant contained in the agreement between appellee and appellant.
As hereinbefore indicated, certain other provisions contained in the final decree should be set aside, as follows :
Item 3. The award for support of the children, because that was only sought as an alternative.
Item 5c. The one-half of the bill for services of the certified public accountants imposed against appellee.
Item 5d. The award granting fee to appellant’s attorneys for services rendered in connection with obtaining support for the minor children.
This court is ruling that the award for child support and for attorney’s fee granted in connection therewith should be set aside, since such award and fee granted therefor were based upon appellant’s alternative prayer in the event she was unsuccessful in having the contracts of appellee with the clinic declared in violation of her alimony rights. By her petition appellant sought an allowance for fee for her attorneys in the proceeding before the chancery court. It was appellee who, by his action, created the situation which made it necessary for appellant to act. She had to proceed in order to protect and enforce her alimony rights under the agreement of the parties sanctioned by court decree. She is .litigating in effect to enforce her alimony rights authorized by court decree which her former husband seeks to materially diminish and take from her. See section 65.16 Florida Statutes, F.S.A.; and Simpson v. Simpson, Fla.1953, 63 So.2d 764. She is entitled to an allowance for her attorneys for their services rendered in the trial court as they relate to the violation of the alimony rights phase of the trial. Appellant is therefore authorized to make application to the chancellor for hearing for allowance of reasonable compensation for her attorneys in this connection.
Appellant's petition to fix and allow attorneys’ fee to appellant’s attorneys for services rendered to appellant in this appeal is granted and the sum of $300 is hereby allowed.
Accordingly, the decree of the chancellor is hereby affirmed in part and reversed in part for further proceedings not inconsistent with this opinion.
Affirmed in part and reversed in part.
ALLEN and SHANNON, JJ„ concur.