0217

Monica M. MARSHALL, Respondent, v. Robert D. MARSHALL, Jr., Appellant.

(318 S. E. (2d) 133)

Court of Appeals

*A. Arthur Rosenblum* and *Howe & Howe*, Charleston, *for appellant.*

*Cody W. Smith, Jr.,* and *Donald J. Budman* of *Solomon, Kahn, Smith & Baumil,* Charleston, *for respondent.*

Heard Feb. 23, 1984.

Decided July 6, 1984.

SHAW, Judge:

This action was commenced by the respondent—Mrs. Marshall, a resident of North Carolina, seeking enforcement of a court approved separation agreement consummated in Florida by her and the appellant—Dr. Marshall, a resident of Charleston County. The family court judge ruled that the agreement was entitled to full faith and credit. We affirm.

Dr. and Mrs. Marshall were married in Florida in 1967 while Dr. Marshall was attending medical school. Two children were born of the marriage. Prior to their divorce in March of 1973, the parties entered into an agreement which primarily concerns their children. This agreement, which was incorporated into the Florida divorce decree, provided, among other things, that Mrs. Marshall would make no alimony claims, that Dr. Marshall would pay 40% of his after-tax income as child support annually not to exceed $25,000, and that Dr. Marshall would establish a trust fund for each child which would pay a minimum of $1,000 per year toward the college education of each child.

In 1974, Dr. Marshall petitioned the Florida courts to have the agreement vacated. The court found the agreement was fair and just to both parties, Dr. Marshall understood the terms of the agreement when he entered into it, and he was not coerced or unduly influenced into signing the agreement. His petition was denied.

In 1978, Mrs. Marshall commenced a contempt action against Dr. Marshall. The Florida court ordered Dr. Marshall to comply with the terms of the agreement by creating a trust and funding it at a rate of $1,000 per year per child, by obtaining two life insurance policies on himself with face values of $50,000 each and with his children as irrevocable beneficiaries thereof, by paying $870 per month in child support to Mrs. Marshall, and by providing any and all of his financial records to the court and Mrs. Marshall. In 1979, Dr. Marshall was found in contempt for not complying with the

1978 court order. He was allowed to purge the contempt by paying $2,820 in arrearages and by paying $870 per month in child support.

Subsequently, Dr. Marshall moved to Charleston, South Carolina, and Mrs. Marshall to North Carolina. Mrs. Marshall commenced this action in October of 1980 in the Charleston County Family Court seeking enforcement of the parties agreement. The Family Court Judge gave full faith and credit to the Florida divorce decree incorporating the agreement and the subsequent Florida court orders and ordered Dr. Marshall to pay $10,010 in child support arrearages, to begin paying $25,000 annually in child support since 40% of his after-tax income exceeded $25,000 and to pay $6,467.45 in arrearages into the trust for his children's college education and to continue to fund it at the rate of $1,000 per child per year.

In an appeal from an order of the Family Court, this ■ court has jurisdiction to find facts in accordance with its view of the preponderance of the evidence. *Lever v. Lever*, 278 S. C. 433, 298 S. E. (2d) 90 (1982).

The initial question for our decision is whether the courts of this state are required to give full faith and credit to the Florida divorce decree and the subsequent orders thereon. Dr. Marshall is not contesting the award of child support arrearages. The question is whether we must enforce the portion of the agreement concerning future child support payments when the amount of such support is based on a percentage of Dr. Marshall's income.

This award of child support comes before us under a ■ petition asking for enforcement of a Florida divorce decree incorporating the agreement containing the percentage-of-income formula. The courts of South Carolina are required to give full faith and credit to divorce decrees from sister states which are valid. *Scheper v. Scheper*, 125 S. C. 89, 118 S. E. 178 (1923); *Koebberling v. Koebberling*, 278 S. C. 204, 293 S. E. (2d) 857 (1982). The same rule applies to valid divorce decrees from sister states ordering the payment of alimony and/or child support. If these decrees are valid and final, they are entitled to full faith and credit. *Yarborough v. Yarborough*, 290 U. S. 202, 54 S. Ct. 181, 78 L. Ed. 269 (1933); *Alexander v. Alexander*, 164 S. C. 466, 162 S. E. 437 (1932);

*McLeod v. Sandy Island Corp.*, 260 S. C. 209, 195 S. E. (2d) 178 (1973).

The agreement in question was approved by the Florida courts and incorporated into the parties' divorce decree. It subsequently withstood two challenges to its validity in Florida courts. While we may not approve of the method by which the parties chose to determine the amount of child support, there is little doubt that the percentage-of-income formula has been upheld by Florida courts here and in other situations. *See Hood v. Hood*, 100 So. (2d) 422 (Fla. App. 1958); *Levine v. Levine*, 329 So. (2d) 381 (Fla. App. 1976). Dr. Marshall does not question the jurisdiction of the Florida courts to issue the decree and orders in question and makes no claim of fraud in the procurement of the agreement. His attack on the agreement on the grounds or coercion and undue influence was unsuccessful. The order upholding the agreement was not appealed. We have no doubt that the decree is valid and not subject to collateral attack. *Kahn v. Kahn*, 213 S. C. 369, 49 S. E. (2d) 570 (1948).

Our next inquiry is into the finality of the agreement. By statute (Fla. Stat. Section 61:14), Florida courts have the continuing power to modify awards of alimony and child support, whether such awards are the result of a court order or a court approved agreement. Such a modification can occur prospectively only, *see Benson v. Benson.* 369 So. (2d) 99 (Fla. App. 1979), and only if there has been a substantial change in the circumstances of either party or of the children. *See Lacy v. Lacy*, 413 So. (2d) 472 (Fla. App. 1982); *Burdack v. Burdack*, 371 So. (2d) 528 (Fla. App. 1979).

The fact that the award is prospectively modifiable in Florida does not prevent the decree from being final. *McLeod v. Sandy Island Corporation, supra; Bennett v. Bennett*, 260 S. C. 605, 198 S. E. (2d) 114 (1973); *Johnson v. Johnson*, 198 S. C. 474, 13 S. E. (2d) 593 (1941). Dr. Marshall has presented no proof that the decree has in any manner been reversed, vacated, or annulled, and we hold that the decree is final. *Johnson v. Johnson*, 194 S. C. 115, 8 S. E. (2d) 351 (1940). Thus, we are bound under Art. 4, Section 1 of the U. S. Constitution to give the decree incorporating the parties' agreement and the subsequent orders thereon full faith and credit.

Neither Mrs. Marshall nor Dr. Marshall has asked that the

agreement be modified based on a change of circumstances and neither party has made a showing of a change of circumstances except for Dr. Marshall's increased income. Mrs. Marshall prays that the agreement be enforced; Dr. Marshall wants it enforced only to the extent that it is "reasonable, fair and just".

The Florida courts have already ruled that the agreement was fair and just and not procured by coercion or undue influence on the part of Mrs. Marshall. Since those judgments are entitled to full faith and credit, they are not subject to collateral attack by Dr. Marshall except on the grounds of fraud or lack of jurisdiction when the judgments were rendered. *Kahn v. Kahn, supra; Taylor or Taylor,* 229 S. C. 92, 91 S. E. (2d) 876 (1956); *Koebberling v. Koebberling, supra.* Dr. Marshall makes no claim as to fraud or jurisdiction. As stated above, the decree and orders thereon are not subject to collateral attack.

Dr. Marshall does not argue that the agreement is ambiguous. It clearly states that he is to provide 40% of his after-tax income as child support. In *Stanaland v. Jamison,* 275 S. C. 50, 268 S. E. (2d) 578 (1980), it was held that a parent can by contract assume an obligation to his children greater than the law would otherwise impose, and can bind himself to supply not only the necessities but some of the luxuries of life. This is especially true when the amount to be paid under the agreement is not inconsistent with the parent's standard of living and his ability to provide. Dr. Marshall is a successful radiologist, and the record indicates he is able to pay the amount set by the agreement. Based on this decision, we are more than inclined to enforce the agreement as written. This is especially so when the Marshalls had been operating under the agreement for seven years when this lawsuit was commenced whereas in *Stanaland,* the agreement had only been in effect for two years at the time of the trial.

Finally, Dr. Marshall claims that the Family Court misinterpreted the terms of the agreement relating to the education trust. The agreement provides that Dr. Marshall will create a trust which will pay a *minimum* of $1,000 per year toward the college education of *each* child. Both the Florida courts and the South Carolina Family Court ruled that the agreement required Dr. Marshall to fund the trust at the rate of $1,000 per year per child.

As with any other contract, where the language of a marital agreement is susceptible of more than one interpretation, it is the duty of the Family Court Judge to ascertain the intentions of the parties. *McKinney v. McKinney*, 274 S. C. 95, 261 S. E. (2d) 526 (1980). The determination made by the judge in all matters relating to child support, such as this education trust, will not be disturbed absent an abuse of discretion. *Graham v. Graham*, 253 S. C. 486, 171 S. E. (2d) 704 (1970); *Smith v. Smth*, 264 S. C. 624, 216 S. E. (2d) 541 (1975); *Adams v. Adams*, 262 S. C. 85, 202 S. E. (2d) 639 (1974).

We see no abuse of discretion. If Dr. Marshall pays $2,000 into the trust annually, at some point in time the trust will be able to pay a minimum of $1,000 per year per child toward the children's college education. However, no limit was imposed as to thc number of years that these payments must be made. We interpret the court's order as including a reasonable time limit on these payments. If, in the future, Dr. Marshall feels that the trust is sufficiently funded to meet the requirements of the agreement, his recourse would be to petition the Family Court for termination of the payments. *See Hinson v. Hinson*, 269 S. C. 268, 237 S. E. (2d) 81 (1977).

Affirmed.

SANDERS, C. J., concurs.

GOOLSBY, J., concurs with opinion.

GOOLSBY, Judge (concurring):

I concur in the result reached by the majority.

The majority concludes that the award of child support by the Florida court is entitled to full faith and credit based upon *Yarborough v. Yarborough*, 290 U. S. 202, 54 S. Ct. 181, 78 L. Ed. 269 (1933). The Supreme Court in *Yarborough* holds that the full faith and credit clause "applies to an unalterable decree of alimony for a divorced wife [and] likewise to an unalterable decree of [support] for a minor child." *Id.* at 213, 54 S. Ct. at 185.

Here, however, the Florida decree appears to be one that is "alterable" because, by statute, Florida courts may prospectively modify a child support decree. South Carolina is not

required under the full faith and credit clause to give the decree any more effect than it is to be accorded in Florida. If a Florida court can modify the decree, so can a South Carolina court. *Ford v. Ford,* 371 U. S. 187, 83 S. Ct. 273, 9 L. Ed. (2d) 240 (1962).

I would affirm the judgment of the family court enforcing the Florida decree but only upon principles of comity.